IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MELINDA J. MONROE,

    Plaintiff,

vs.                                               Case No. 4:09cv243-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be reversed and benefits be awarded.

**Procedural status of the case**

Plaintiff, Melinda J. Moore, applied for disability insurance benefits and supplemental security income benefits. Her last date of insured status for disability benefits was December 31, 2006. Plaintiff alleges disability due to organic mental disorder (mild mental retardation), illiteracy, depression, anxiety, and asthma, with onset

on January 30, 2004. Plaintiff was 44 years old at the time of the administrative hearing (on February 26, 2008), has no more than a 9th grade special education, and has past relevant work as a short order cook, a fast food worker, and a detonator assembler. The Administrative Law Judge found that Plaintiff had the residual functional capacity to do a full range of light work with a few limitations, including a limitation that her work involve only simple 1-2 step tasks and not involve meeting a quota or production goals. The ALJ found that while Plaintiff cannot do her past relevant work, she can do work as a ticket seller, parking lot attendant, and ticket taker, and thus was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the administrative hearing**[1]

Plaintiff testified that she worked at Kentucky Fried Chicken for seven years as a cook, packer, and cashier. R. 816. She worked at Denny's Restaurant as a waitress, and at Hardee's as a cook, waitress, and sandwich maker. R. 816-187. She also

---

[1] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, as available to the court on Westlaw, or PDRhealth™, PHYSICIANS DESKTOP REFERENCE, found at < http://www.pdrhealth.com/drugs/drugs-index.aspx >. Information about medical terms and prescription drugs come from DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS, available at: http://www.mercksource.com (Medical Dictionary link) or MEDLINE PLUS, found at www.nlm.nih.gov/medlineplus/mplusdictionary.htm.

Case No. 4:09cv243-MP/WCS

worked for five years assembling detonators for Sooner Defense of Florida. R. 817. She also worked at Arby's as a cook, sandwich maker, and cashier. R. 818.

Plaintiff said she could no longer work due to her back, legs, and needing a "breathing machine," which probably meant a nebulizer for her asthma. R. 819. She was using Albuterol.[2] She had also been prescribed Tramadol.[3]

Plaintiff said that during the day, she tries to keep her house clean and she feeds her four dogs. R. 822, 824. She said that she vacuums, sweeps, washes dishes, and dusts. R. 823. She does some cooking, but shops for groceries with others. *Id.* She said she could drive a motor vehicle, but not far. *Id.* Her roommate did the laundry. R. 824. Plaintiff said that she could sit for 30 minutes, and then would have to move and walk around. R. 824-825. She thought she could stand for 20 to 25 minutes. R. 825. She said that the heaviest weight she could lift was a 24 pack of Pepsi. *Id.*

**Medical evidence**

The medical evidence will not be set forth in detail, but will be discussed as relevant to the legal analysis.

**Legal analysis**

Plaintiff first argues that the ALJ should have found that her mental condition meets or equals Listing 12.05C. Doc. 18, p. 12. The Commissioner's rules provide that if the claimant has an impairment that is listed in or equal to an impairment listed in

---

[2] Albuterol Sulfate is prescribed for bronchial spasms and used to treat asthma. PDRhealth™, PHYSICIANS DESKTOP REFERENCE .

[3] Tramadol hydrocholoride is marketed as Ultram, a centrally acting synthetic opioid analgesic. PHYSICIANS' DESK REFERENCE (2005).

Appendix 1, Subpart P, following 20 C.F.R. § 1599, then a finding of disability will be made at Step 3 without considering the claimant's age, education, and work experience. 20 C.F.R. § 1520(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990) (emphasis by the Court). A claimant is entitled to benefits if it is shown that his or her limitations meet, or are medically or functionally equal to, the limitations set forth in the Listing. Shinn ex rel. Shin v. Commissioner, 319 F.3d 1276, 1282 (11th Cir. 2004).

The claimant has the burden of proving that his impairments meet or equal a listed impairment by presentation of specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. at 530, 110 S.Ct. at 891. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. (emphasis by the Court).

> Listing 12.05C provides in relevant part:
>
> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>     \*      \*      \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Listing 12.05C, Appendix 1 to Subpart P of Part 404 – Listing of Impairments, 20 C.F.R. Listing 12.00 provides: "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."

  The Commissioner agrees that the ALJ found that Plaintiff had two additional impairments, asthma and degenerative disc disease, and that this finding satisfied the requirement of Listing 12.05C (that Plaintiff have a physical or other mental impairment imposing an additional and significant work-related limitation of function). Doc. 25, p. 19. The Commissioner argues, however, that the ALJ determined that the I.Q. scores were not valid due to the extent of Plaintiff's daily activities, prior work experience, and ability to complete written forms in the process of applying for social security benefits. *Id.*

  The ALJ noted that Plaintiff "was recently diagnosed by Dr. Hume Guilford as having mild mental retardation based on the Wechsler IQ scores of verbal 66[,] performance 64, and full scale 62." R. 19. The Administrative Law Judge determined, however, that "the claimant does *not* have a *valid* verbal, performance, or full scale IQ of 60 through 70 . . . ." R. 19 (emphasis added). She reasoned:

> The record evidence does not document any concurrent deficits or impairments present in the claimant's adaptive functioning. There is no evidence that she cannot get along appropriately with neighbors, public agencies, co-workers, supervisors, and authority in general. She has previously worked and she has never been fired from a job or asked to leave due to mental limitations. In pursuing her claim for benefits, the claimant has completed multiple forms and has demonstrated a limited ability to read and write. Additionally, the claimant testified that she has a 9th grade education. She drives, goes grocery shopping and performs daily household chores, including taking care of household pets. Nor does the claimant have any marked impairments in the four broad functional areas set out in the disability regulations for evaluating mental disorders due o her low intelligence as more fully discussed below.

R. 19. On the next page, however, the ALJ said that "the claimant *has* a *valid* verbal, performance and full scale IQ of 60 through 70." R. 20 (emphasis added).

The Commissioner argues that "[t]he ALJ's decision, when read as a whole, shows that she found that Plaintiff did not meet or medically equal Listing 12.05C because Plaintiff did *not* have the requisite *valid* IQ scores." Doc. 25, p. 21 (emphasis added). That is not persuasive. The ALJ was admittedly inconsistent, finding the scores to be both valid and invalid, but at step 2 she determined that Plaintiff has the "severe" impairment of low intelligence. R. 16. To support her finding that Plaintiff's low intelligence was a "severe" impairment, the ALJ said: "the claimant was diagnosed with mild mental retardation based on [a] full IQ score of 62." *Id*. In other words, the ALJ found the I.Q. score of 62 was valid. *See*, Cammon v. Astrue, 2009 WL 3245458, *10 (N.D. Ga. Oct05, 2009) (No. CIV. A. 3:08-CV-0131-JFK) ("While the ALJ correctly noted that Dr. Maierhofer did not specifically state that the IQ scores were valid, he also did not state that the scores were invalid.").

In <u>Hodges v. Barnhart</u>, 276 F.3d 1265 (11th Cir. 2001), the court held that "a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." 276 F.3d at 1266. If a claimant's I.Q. scores are valid, the scores alone satisfy the first criterion of Listing 12.05C. *Id.*, at 1269. *Accord*, <u>Grant v. Astrue</u>, 255 Fed.Appx. 374 (11th Cir. Nov 13, 2007) (not selected for publication in the Federal Reporter, No. 07-12206). "It is therefore critical that an ALJ specifically address and resolve the validity of an I.Q. score; if the I.Q. score is valid and meets or equals the criteria of a listed impairment, the ALJ can go no further." <u>Thomas v. Barnhart</u>, 2004 WL 3366150, *2 (11th Cir. Dec 07, 2004) (No. 04-12214).

Had the ALJ found the I.Q. score to have been invalid, her conclusion would lack the support of substantial evidence. Marie Hume Guilford, Ph.D., conducted an evaluation on November 16, 2007, and she said the scores were valid. R. 335, 337. She administered the Wechsler Adult Intelligence Scale – Third Edition, finding that Plaintiff had a Verbal I.Q. of 66, a Performance I.Q. of 64, and a Full Scale I.Q. of 62. R. 338. Dr. Hume Guilford said:

> Ms. Monroe was cooperative during the testing portion of this assessment. She initially became emotional because she could not answer some of the questions but once she was encouraged that she just needed to try her best she was able to gather herself and did fine. She clearly lacks education. Her behavior was stable and purposeful as she worked on the tasks presented to her. She appeared to approach all problems presented to her with appropriate effort and interest in doing her best. As a result, the presents results *are felt to be a valid estimate* of her current and optimal level of functioning in the areas assessed.

R. 337 (emphasis added). Thus, the only conclusion as to the validity of the scores that could have been made on this record is that the scores were valid.

A valid I.Q. score, however, does not necessarily mean that Listing 12.05C has been satisfied. In <u>Lowery v. Sullivan</u>, 979 F.2d 835 (11th Cir. 1992), the court held:

> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities.

979 F.2d at 837. The court further held: "This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." <u>Id.</u>, *citing* <u>Popp v. Heckler</u> 779 F.2d 1497, 1499 (11th Cir. 1986).[4] In determining how to give weight to an I.Q. score, it is appropriate to consider medical reports, daily activities, behavior, and other evidence in the record. <u>Popp</u>, 779 F.2d at 1499. This appears to be another way of saying that in order to meet the criteria of Listing 12.05C, a claimant must not only have a qualifying valid I.Q. score, but must also satisfy the requirements of the introductory paragraph of that Listing:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

---

[4] In <u>Lowery</u>, the Commissioner conceded that the I.Q. score was valid and that the claimant had additional work-related limitations. 979 F.2d at 838. Hence, the only issue was whether there was evidence that the mental retardation manifested itself before age 22. *Id.*

Listing 12.05C.  If a claimant has been able to adapt in functioning after age 22,[5] it is permissible to find that Listing 12.05C has not been met.

The caselaw addressing the "adaptive functioning" aspect of Listing 12.05C suggests that the adaptive functioning must be significantly inconsistent with the I.Q. score.  An ability to do simple daily activities and simple jobs is not enough.  As noted in Lowery, in Popp the court sustained the ALJ's rejection of a claim of equivalency to Listing 12.05C because the claimant's I.Q. score of 69 was "inconsistent with evidence that [the claimant] had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher."  979 F.2d at 837, citing Popp, 779 F.2d at 1488.  Additionally, there was evidence in Popp that the claimant had "tended to place himself in a very unfavorable light," thereby rendering the personality test scores (the MMPI, not the I.Q. test) invalid in the opinion of the examiner.  Popp, 779 F.2d at 1498-1499, 1500.

Popp is perhaps the strongest case for finding that an I.Q. score below 70 does not necessarily meet Listing 12.05C.  There are several others with facts somewhat like Popp.  Bischoff v. Astrue, 2008 WL 4541118 (S.D. Fla. Oct 9, 2008) (No.

---

[5] In an unpublished case, the Eleventh Circuit has recast the rule of Popp:  to meet Listing 12.05C, "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have [current] deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22."  Pettus v. Astrue, 226 Fed.Appx. 946, 948 (11th Cir. Apr 5, 2007) (not selected for publication in the Federal Reporter, No. 06-15667).  However, it has been pointed out that:  "Listing 12.05 does not require *significant* deficits in adaptive functioning; it only requires that there be 'deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . before age 22.'  20 C.F.R., Part 404, Subpart P, Appendix 1 § 12.05."  Cammon v. Astrue, 2009 WL 3245458, *11 (N.D. Ga. Oct 5, 2009) (No. CIV. A. 3:08-CV-0131-JFK).

Case No. 4:09cv243-MP/WCS

07-60969-CIV), affirmed the determination that Listing 12.05C was not met. The court noted that while the claimant's I.Q. scores were lower than 70, the claimant had previously worked as a parts manager and as an automobile mechanic, jobs which required technical knowledge and skills, and he successfully supervised other people for five years. *Id.*, at *20. There was also evidence that the claimant was "faking" his I.Q. score, and gave conflicting reports that he had finished only the sixth, or seventh, or eighth, or ninth, or tenth grades, or had a G.E.D., or had vocational training. *Id.*

In <u>Outlaw v. Barnhart</u>, 197 Fed.Appx. 825, 827 (11th Cir. Aug 10, 2006) (not selected for publication in the Federal Reporter, NO. 05-15996), the court affirmed the finding that Listing 12.05C had not been satisfied, noting that the claimant had an I.Q. *above 70 (*which, standing alone, distinguishes it from the case at bar), and "had worked for several years as an adult as a van driver, a security guard, and in the shipping and receiving department at a pecan plant."

The same result occurred in <u>Davis v. Astrue</u>, 2008 WL 2939523 (M.D. Ala. Jul 25, 2008) (No. CIV.A. 2:07CV880-TFM). In that case, although the claimant had an I.Q. score under 70, she had completed twelfth grade, received training in cosmetology and secretarial skills, had a driver's license, was able to read, write, and perform simple math, and a consulting psychologist had determined that she was in the borderline level of intellectual functioning rather than mildly retarded. *Id.*, at *3.

To like effect is <u>Brown v. Astrue</u>, 2009 WL 2135005 (S.D. Ga. Jul 15, 2009) (No. CV608-036). In that case, the court affirmed the ALJ's denial of the claim. Although the claimant had performance and full scale I.Q. scores below 70, he admitted in his work

questionnaires "that while working as a carpenter he was a lead worker who supervised, hired, and fired employees, and regularly used machines and technical knowledge and skills, including taking measurements and making calculations. . . . And as a farmer he also supervised other workers." 2009 WL 2135005, *5, n. 5. *See also*, Lyons v. Astrue, 2009 WL 1657388, *10-11 (M.D. Fla. Jun 10, 2009) (No. 208-CV-614-FTM-29SPC) (the claimant obtained a high school diploma, did not take special education classes, could take care of his personal needs, earned from $13,000 to $18,000 per year for 7 years, and there was evidence that he was malingering when he took the intelligence tests).

A case with a different result is Durham v. Apfel, 34 F.Supp.2d 1373 (N.D. Ga. 1998).[6] There, the court held:

> Mr. Durham's work history does not support the ALJ's implication that he successfully worked for 40 years. He had no earnings whatsoever in nine years between 1953 and 1991, and minimal earnings several other years (TR 101-102). Mr. Durham has worked primarily as a heavy laborer (TR 46). There is no evidence that these jobs are beyond the reach of a mildly retarded individual.

34 F.Supp.2d at 1380. Distinguishing Popp, the court said:

> Unlike Mr. Popp, Mr. Durham's work experience does not include technical jobs, but jobs as a laborer. He did not teach high school algebra, he worked as a tire repairer, laborer, kitchen helper and material handler (TR 46). Mr. Durham did not go to college, he went to the fourth grade.

*Id. See also,* Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003) ("ability to pay his own bills, add and subtract, use an ATM machine and to take care of all his own personal needs," and "ability to identify and administer his medication; his previous jobs;

---

[6] This is a report and recommendation to a district judge by a magistrate judge. The report and recommendation was adopted by the court. Case No. 1:97cv2061IRWS, doc. 12 entered on December 22, 1998, available on PACER. No appeal was taken.

Case No. 4:09cv243-MP/WCS

his obtaining a GED" were not inconsistent with a finding of mental retardation and the I.Q. scores) (citing Brown v. Sec'y of HHS, 948 F.2d 268, 270 (6th Cir. 1991), "rejecting the Commissioner's argument that a claimant's full scale IQ of 68 was inconsistent with, among other things, his driver's license and work history as a truck driver, limited literacy and sixth grade education, and ability to make change, do laundry, and clean his room.").

Two decisions from this district should also be mentioned. In Alday v. Astrue, 2009 WL 347722 (N.D. Fla. Feb. 11, 2009) (No. 5:08cv217-SPM/WCS), the claimant had a Verbal I.Q. of 66, a Performance score of 73, and a Full Scale I.Q. of 66, and the test was thought to be valid by the psychologist who administered the test. *Id.*, at *3. The ALJ relied in part on the Plaintiff's daily activities of "having a boyfriend," sweeping and doing some laundry, taking care of a dog, and walking grandchildren to school, to find that the I.Q. scores were not reliable and that the claimant was not mildly mentally retarded. *Id.*, at *5. This court held that these minimal activities were not substantial evidence in the record to draw that conclusion. *Id.* The court also determined that the claimant's work history was not substantial evidence to discount the I.Q. scores. The claimant had held jobs spanning the years 1983 through 2003, but her earnings record showed significant gaps and minimal earnings in a number of years. *Id.*, at *6. Relying on Durham and Brown, *supra*, the court held that the ALJ should have found that the I.Q. scores were valid and met the first criterion of Listing 12.05C. *Id.*, at *7.

Likewise, in Black v. Astrue, 678 F.Supp.2d 1250 (N.D. Fla. 2010), the ALJ had reasoned that Plaintiff's adaptive functioning was not consistent with Listing 12.05C.

This court disagreed, finding that the evidence was only that the Plaintiff had worked as a mushroom picker, could drive a motor vehicle for short distances, cook, took care of her personal needs, and handled cash without a bank account, but needed help from her family for other activities. The court concluded that this was not sufficient evidence of adaptive functioning to discount an I.Q. score between 60 and 70. 678 F.Supp.2d at 1261.

In the case at bar, Plaintiff told Dr. Hume Guilford that she went as far as the eighth or ninth grade, and was in at least one special class. R. 336. She told Dr. Hume Guilford that she had worked in fast food jobs in the past. *Id.* She said that during the day, she watches television, goes outside for a walk, takes care of the dogs, drives once in a while, is driven by her mother or daughter, and is able to do chores sometimes. R. 336-337. She was polite and cooperative during the interview, and her speech was coherent. R. 337. No abnormalities of thought were present. *Id.* Her attention and concentration were adequate to follow the interview and testing. *Id.* After testing, Dr. Hume Guilford concluded:

> Ms. Monroe's general cognitive ability is in the extremely deficient range of intellectual functioning. Overall thinking and reasoning abilities exceed those of approximately 1% of adults her age. Her verbal and nonverbal intellectual abilities both fell in the extremely deficient range indicating that she functions below 99% of the adult population in these areas. At this level of general aptitude, her ability to function effectively in typical adult activities is significantly compromised. *This appears consistent with her history of marginal adaptive functioning.*

R. 338-339 (emphasis added). In summary, Dr. Hume Guilford was fully aware of the same sorts of daily activities and work experience upon which the ALJ relied to find the

I.Q. scores either to be invalid or not dispositive. Yet Dr. Hume Guilford found that the I.Q. scores were consistent with Plaintiff's "marginal adaptive functioning." R. 339.

Second, the case law indicates that the ALJ erred. Plaintiff has not shown the exceptional adaptive history that the claimant in <u>Popp</u> demonstrated. There is no evidence that Plaintiff has technical skills or tried to fake her I.Q. score as was the case in <u>Bischoff</u>. Plaintiff's I.Q. is not above 70, so <u>Outlaw</u> does not apply. Plaintiff did not complete the twelfth grade, and does not have training in cosmetology or secretarial work, and no expert has said that she is in the borderline level rather than mildly mentally retarded, so the <u>Davis</u> case does not apply. Plaintiff has not worked as a carpenter as a lead worker who supervised, hired, and fired employees, and regularly used machines and technical knowledge and skills, including taking measurements and making calculations, and so the first <u>Brown</u> case does not apply. Likewise, there is no evidence that Plaintiff was malingering when she took the I.Q. test, or that she obtained her high school diploma, so the <u>Lyons</u> case does not apply. In contrast, the kinds of jobs and daily activities relied upon by the ALJ to determine that Plaintiff's adaptive functioning trumped the I.Q. scores are much more like <u>Durham</u>, <u>Markle</u>, <u>Alday</u>, <u>Black</u>, and the second <u>Brown</u> case.

The ALJ determined in part that Plaintiff had demonstrated significant adaptive behavior by completing multiple forms and demonstrating a limited ability to read and write. Plaintiff, however, has pointed out that the forms contain multiple errors and it is unclear to what extent Plaintiff was helped by social security staff. One form states that she can read English and then states she cannot read. R. 311. Two forms state that

she supervised 6 other people 8 hours a day, R. 312, 229, while another (filled out in what is presumably Plaintiff's simple handwriting) stated that Plaintiff was never a supervisor or lead worker. R. 303. Plaintiff's mother helped her fill out another form. R. 200. Another form was filled out by social security staff in a conversation with Plaintiff's sister, noting that Plaintiff's "mental condition hindered her ability" to be interviewed. R. 168. One form was completed with no contact with Plaintiff. R. 150. Plaintiff apparently completed forms on April 20, 2004 (R. 266-272), May 27, 2004 (R. 302-309), and June 29, 2005 (R. 214-220), but the handwritten forms reflect a very simple grasp of reading and writing. On the first, when asked what she does during the day, Plaintiff said: "I take my medincin and walk & clean up." R. 266. When asked to describe how illness affects her personal care, she wrote: "Take pills to control my body?" R. 267. She said she prepares frozen foods. R. 268. When asked how well she can follow written instructions, Plaintiff wrote: "Not well because I need some one read it to me." R. 271. On the last form, Plaintiff wrote: "I try my best to do this all by myself so if you don't under stand please call my doctor here in Perry." R. 220. The evidence from these forms shows that Plaintiff can function with reading and writing at a simple level, but this is consistent with her ability to work in a fast food job. Following the reasoning of the cases discussed above, this is not substantial evidence to discount a valid I.Q. score. Since the I.Q. score is valid and the other criteria of Listing 12.05C were met, Plaintiff's applications for benefits should have been approved at step 3.

**Whether the ALJ erred in finding that Plaintiff can perform other work**

Plaintiff argues that the three jobs identified by the vocational expert as within Plaintiff's ability to perform have reasoning (R) levels of 2 or 3. Doc. 18, p. 19. Since the ALJ determined that Plaintiff could perform "simple, 1-2 step work," R. 20, Plaintiff argues that jobs at reasoning level 2 or 3 are beyond her assigned capability. *Id.* Plaintiff argues that there was an unexplained inconsistency with the Dictionary of Occupational Titles that should have been explored with the vocational expert. *Id.*, at 20. Plaintiff cites for the proposition that a remand is needed because a "limitation to repetitive tasks . . . is not contained within the definition of unskilled." Vuxta v. Commissioner of Social Sec., 194 Fed.Appx. 874, 878 (11th Cir. 2006) (not selected for publication in the Federal Reporter, NO. 06-11768). The court need not resolve this issue as Plaintiff's first argument is persuasive.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were not based upon substantial evidence in the record and did not correctly follow the law. The decision of the Commissioner to deny Plaintiff's application for benefits should be reversed and benefits should be awarded.

Whether to remand for further consideration is the next issue. The court should not remand. "Reversal is warranted where the record is fully developed and, upon the application of correct legal standards, the claimant is entitled to benefits." Durham, 34 F.Supp.2d at 1381, citing Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). The record is fully developed and Plaintiff is entitled to benefits. That is the proper remedy here.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and the Commissioner be **ORDERED** to grant Plaintiff's applications for benefits.

**IN CHAMBERS** at Tallahassee, Florida, on June 11, 2010.


s/ William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**